**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:23-cr-00718-MTS/SPM |
| | ) | |
| SIDDHARTH JAWAHAR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR TRANSFER OUT OF DISTRICT FOR TRIAL & SUGGESTIONS IN SUPPORT THEREOF**

COMES NOW Defendant Siddharth Jawahar, by and through his undersigned counsel, and pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, respectfully moves this court to transfer the above case from the Eastern District of Missouri to the Southern District of New York for trial. For and in support of this motion, Defendant states the following:

## INTRODUCTION

1. On December 20, 2023, Defendant was charged in the Eastern District of Missouri in a grand jury indictment with three counts of wire fraud pursuant to 18 U.S.C. § 1343 and one count of Investment Adviser Fraud pursuant to 15 U.S. Code § 80b–6. (See R. Doc. 1). The Government alleges the Defendant created a scheme to obtain money and property from investors from around the country by making false promises and soliciting funds via email.

2. Prior to his January 8, 2024, arrest, the Defendant was a resident of New York City, New York, where he maintained a residence. Defendant was arrested in Miami, Florida, in the Southern District of Florida, where he was living part-time.

3. While the Defendant has been charged in the Eastern District of Missouri, he and his alleged activities have very few contacts with this District.

4. It would be burdensome, both financially and logistically, for Mr. Jawahar to defend himself in a jury trial conducted in the Eastern District of Missouri as most of the witnesses that will be a necessary part of this litigation are located in New York, New York, in the Southern District of New York, which is a more appropriate venue for this case.

5. For these and the reasons that follow, Mr. Jawahar respectfully requests that this matter be transferred for trial, pursuant to Federal Rule of Criminal Procedure 21(b), to the United States District Court for the Southern District of New York, as that venue would be significantly more convenient for the parties and the witnesses involved, and would be in the interest of justice the most appropriate venue for this matter.

## LEGAL STANDARD

6. Article III, §2 of The United States Constitution provides in pertinent part that, "the trial of all crimes…shall be held in the state where the said crimes shall have been committed…"

7. Federal Rule of Criminal Procedure 18 provides in pertinent part that, "the government must prosecute an offense in a district where the offense was

committed. The Court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

8. Federal Rule of Criminal Procedure 21(b) provides, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Rule 21(b) interjects into criminal law an analogue to the civil doctrine of forum non conveniens." *United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976).

9. It is the defendant's burden of showing that the matter should be transferred. *See United States v. Kanner*, No. 07-CR-1023-LRR, 2008 WL 2663414, at *5 (N.D. Iowa. June 27, 2008). While the initial choice of venue in a criminal case is a prerogative of the prosecution, the importance of assuring good order in the management of judicial business and efficient handling of a prosecuting attorney's case load requires that a defendant demonstrate a substantial balance of inconvenience to himself if he is to succeed in nullifying this prerogative. *United States v. United States Steel Corp.*, 233 F. Supp. 154 (S.D.N.Y.1964). While the burden is on the defendant to show that transfer is warranted, "the defendant is not required to show 'truly compelling circumstances for…change….[of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *Matter of Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)). Similarly, venue provisions are to be

liberally construed so as to minimize inconvenience to the parties, especially the defendant. *United States v. Lopez,* 343 F.Supp.2d 824, 835 (E.D. Mo. 2004).

10. The decision whether to grant or deny a Rule 21(b) motion rests with the sound discretion of the district court. *See United States v. Green*, 983 F.2d 100, 102 (8th Cir. 1992); *see also Lopez*, 343 F.Supp.2d at 835 (citing *Green*). In considering Rule 21(b) motions, the Eighth Circuit applies a balancing test of the ten factors found in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964) ("*Platt* factors"); *see also United States v. McGregor*, 503 F.2d 1167, 1170 (8th Cir. 1974). Although *Platt* involved a corporate defendant, the ten *Platt* factors are used in cases involving individual defendants as well. *In re U.S.*, 273 F.3d 380 at 388 (3rd Cir. 2001).

11. The ten *Platt* factors to be weighed are: (a) the location of the defendant; (b) the location of the witnesses; (c) the location of the events in issue; (d) the location of the documents and records likely to be used at trial; (e) any disruption of a defendant's business; (f) the expense to the parties; (g) the location of counsel; (h) the relative accessibility of the place of trial; (i) the docket condition of the respective districts; and (j) any other special elements that might affect transfer. *See Lopez*, 343 F.Supp.2d at 835 (enumerating *Platt* factors). Each of the above are addressed below.

## <u>APPLICATION OF FACTS TO THE *PLATT* FACTORS</u>

### a. <u>The Location of The Defendant</u>

12. While Defendant is currently incarcerated in the Eastern District of Missouri, he otherwise has very few contacts with this District.

13. The Defendant was arrested in Miami, Florida, where he maintained a residence.

14. However, from 2013 to 2023 the Defendant resided primarily in New York City residing in Manhattan. (See **Exhibit A**, Defendant's New York City Identification Card).[1]

15. While a defendant is not entitled by right to a trial in the district of his or her residence, their place of residence is a factor to be given consideration in determining the motion for transfer under Rule 21. *See Platt,* at 245-246. This factor favors transfer of the case.

**b. <u>The Location of The Witnesses</u>**

16. Many of the witnesses whose testimony will be necessary for Defendant at any future trial are located in New York City.

17. The Indictment and discovery contain multiple references to Swiftarc-corporate entities. Swiftarc Ventures and the connected Swiftarc entities were all primarily located in New York, New York. Swiftarc Ventures had its first corporate office at One World Trade Center, 85th Floor. Swiftarc Ventures had its second office at 560 Madison Avenue. The business activities of Swiftarc were primarily conducted

[1] "All New York City residents age 10 and older can apply for an IDNYC card. Applicants will be required to present proof of identity and residency in New York City." https://www.nyc.gov/site/idnyc/frequently-asked-questions/frequently-asked-questions.page (link last checked January 8, 2025.

in New York City and the key employees, agents, and personalities associated with Swiftarc were (and are largely) located in New York.

18. On information and belief, alleged victim J.B., while a Missouri resident, was introduced to the Defendant while he was an employee of New York based Merrill Lynch & Co.

19. Similarly, many of the non-Swiftarc witnesses who could be called at trial do not reside in the Eastern District of Missouri. For example:

a. On information and belief one of the alleged victims M.S. resides in New York.
b. S.S. – The first employee of Swiftarc Ventures was and is believed to still be a resident of New York City. This is an individual intricately involved in the marketing materials for Swiftarc who would likely be called as a witness in the case.
c. M.G. – The Defendant's former executive assistant is believed to reside in New York City. This individual will also have knowledge relevant to the defense of this case.
d. A.H. – The former chief of staff for the Defendant is believed to reside in New York City. This individual will also have knowledge relevant to the defense of this case.
e. S.R. – A senior investment associate for Swiftarc who oversaw due diligence, procurement of diligence materials, etc., is believed

to reside in New York City. This individual will also have knowledge relevant to the defense of this case.

f. M.M. – Is a former investor in Swiftarc who is believed to reside in New York City. This individual will also have knowledge relevant to the defense of this case including information about introductions he made between the Defendant and other potential investors.

g. Previous legal counsel for the Defendant and for the entities he was associated with (including Swiftarc) from the law firms of Orrick, Greenburg Taurig, and DLA Piper (NYC and Boston offices) are all located outside of the Eastern District of Missouri and would likely find the Southern District of New York a more convenient venue for the trial of this matter.

h. The prime broker for Swiftarc, an entity which is expected to have information relevant to the defense, was TD Cowen and Company, L.L.C. which is based in New York.

i. The former managing director of TD Cowen, R.E.M., is also believed to be located in the New York area and he would likely be a witness at the trial of this matter.

j. Additionally, the universe of Swifarc investors, investments, employees, etc. were predominately tied to New York City (the meaningful contacts).

k. Additionally, for purposes of trial in this matter the bulk of mitigation and character witnesses who would support the Defendant reside in New York City.

20. This factor favors transfer of the case.

**c. <u>The Location of the Events in Issue</u>**

21. Most Swiftarc Ventures partners meetings and investor meetings took place in New York City at the Core Club which functioned almost as a tertiary office of Swiftarc.

22. Very few of the events referenced in the Indictment took place in the Eastern District of Missouri. Further, none of the entities that the Defendant operated or was associated with had or have offices or personnel in this District.

23. On information and belief, none of the agreements or contracts related to investments referenced in the indictment were signed here in the Eastern District of Missouri.

24. It is also important to note that the Manhattan District Attorney's Office claimed to have assisted in the investigation of these allegations, with Manhattan District Attorney Alvin Bragg, Jr. even stating, "We were pleased to assist the Eastern District of Missouri on this investigation which led to a major federal indictment."[2] This shows the significant ties this case has to the city of New York.

[2] Press Release, U.S. Attorney's Office, Eastern District of Missouri, *Ponzi Scheme Cost Investors in Missouri, Elsewhere Millions, Indictment Says* (January 8, 2024), https://www.justice.gov/usao-edmo/pr/ponzi-scheme-cost-investors-missouri-elsewhere-millions-indictment-says.

25. This factor favors transfer of the case.

d. <u>The Location of The Documents and Records Likely to Be Used at Trial</u>

26. The documents and records in this case are digital and are not an important factor in this *Platt* analysis.

e. <u>Any Disruption of a Defendant's Business</u>

27. Defendant's business has already been substantially disrupted by these allegations and will continue to be the longer this case progresses. This factor neither favors nor disfavors transfer.

f. <u>The Expense to The Parties</u>

28. If Mr. Jawahar is forced to continue defending himself against these allegations in the Eastern District of Missouri, it will cause him significant and unnecessary expenses.

29. It would be financially challenging for both parties to serve process on out of state witnesses and for the parties to fly their out of state witnesses to St. Louis, Missouri, for trial (and house those witnesses here in St. Louis, Missouri), especially when so many reside in New York City or elsewhere in the United States. While the Government has a nearly unlimited budget to prosecute these cases and fly its witnesses around the Country, individual defendants are far more burdened by this logistical consideration. Individual defendants (including this Defendant) have limited budgets and funds are better directed towards the retention of counsel, the provision of legal services by that counsel, and the retention of experts, rather than

in service fees, transportation costs, and logistical concerns that are easily resolved by a simple transfer of venue.

30. It is not the size of the additional expense, but the defendant's ability to bear that expense, that is the relevant consideration in questions of transfer." *United States v. Luros,* 243 F. Supp. 160, 175 (N.D. Iowa 1965).

31. Similarly, it would be easier and cheaper for the Government to present its evidence to a jury in New York City, New York where many witnesses reside.

32. This factor favors transfer.

**g. <u>The Location of Counsel</u>**

15. While Mr. Jawahar has retained "local" counsel in this matter, the fact of the matter is that Mr. Jawahar is currently confined over an hour away from St. Louis, where counsel is located, with much of the legal preparation taking place over phone calls and Zoom. Were this matter to be transferred to New York, New York, the Defendant believes he has access to familiar attorneys there to take over his defense in that jurisdiction. Similarly, while the specific AUSA assigned to prosecute this case currently may be tethered to this District specifically, the Government as a whole would suffer no prejudice related to this factor if this case were to be transferred.

16. This factor, while not in favor of transfer, should not weigh against transfer.

**h. The Relative Accessibility of The Place of Trial**

17. Both Districts are served by major airports and air service and both venues have reasonable mass transportation systems and other services available. Though, with multiple witnesses and documents in New York City, the Southern District would be the most easily accessible District for this litigation.

18. This factor favors transfer of the case.

**i. The Docket Condition of The Respective Districts**

19. Courts note that, because of the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, this factor is of little import in determining the appropriateness of a transfer. *See Lopez*, 343 F. Supp. 2d at 837. As such, this factor, while not in favor of transfer, should not weigh against transfer to the Southern District of New York.

**j. Any Other Special Elements That Might Affect Transfer**

20. All of Defendant's concerns and considerations regarding venue are adequately addressed with respect to the first nine *Platt* factors. No other special considerations need to be brought to the Court's attention.

## CONCLUSION

WHEREFORE Mr. Jawahar, by and through undersigned counsel, respectfully requests this Court grant this Motion and transfer this case to the United States District Court for the Southern District of New York. Transfer is in the interest of justice and will make this litigation far more convenient for the parties and for the witnesses involved.

Respectfully submitted,

NEWTON BARTH, L.L.P

By: */s/ Talmage E. Newton IV*
Talmage E. Newton IV, MO56647
talmage@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
(314) 272-4490 - Office
(314) 762-6710 - Facsimile

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically served on all parties of record and filed with the court via the court's e-filing System on this 8th day of January, 2025.

*/s/ Talmage E. Newton IV*